J-S92043-16
J-S92044-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF W.R.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.B., MOTHER | : | No. 1143 WDA 2016 |

Appeal from the Decree July 15, 2016
in the Court of Common Pleas of Blair County
Orphans' Court, at No(s): 2016 AD 8

| | | |
|---|---|---|
| IN THE INTEREST OF W.R.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.B., MOTHER | : | No. 1144 WDA 2016 |

Appeal from the Order Entered July 15, 2016
in the Court of Common Pleas of Blair County
Civil Division, at No(s): Docket No. CP-7-DP-64-2013
FID: 7-FN-36-2013

| | | |
|---|---|---|
| IN THE INTEREST OF W.R.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.S., FATHER | : | |
| | : | No. 1242 WDA 2016 |

Appeal from the Decree July 15, 2016
in the Court of Common Pleas of Blair County
Civil Division, at No(s): No. 2016 A.D. 8

BEFORE:    SHOGAN, MOULTON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:        **FILED JANUARY 27, 2017**

Before us are the appeals of S.B. (Mother) and T.S. (Father) from the

July 15, 2016 decree that terminated their parental rights to W.R.B. (Child),

as well as the July 15, 2016 order that ruled out Child's Maternal Great-Aunt

*Retired Senior Judge assigned to the Superior Court.

(MGA) and Maternal Great-Uncle (MGU) as placement and adoptive resources. After careful review, we affirm as to Father and dismiss as to Mother.

The trial court's opinion authored for these appeals contains the following case history. Child was born in February 2012. Blair County Children Youth and Families (CYF) became involved with the family later that year, receiving reports of Mother's drug use, mental health issues, arrest and incarceration. Upon Mother's release from prison in February 2013, a safety plan was put in place providing that Child would reside with her Maternal Great-Grandmother (MGG), MGG would supervise all of Mother's contact with Child, and Mother would not remove Child from MGG's residence. However, service providers reported to CYF unsatisfactory physical conditions in MGG's home, a volatile relationship between MGG and Mother, and that Mother was not attending scheduled appointments.

Mother's criminal history dated back to July 2012, when she pled guilty to simple assault and received a sentence of probation. Thereafter, Mother was in and out of prison for probation violations. In June 2013, Mother tested positive for amphetamines and marijuana, and was detained by her probation officer. In August 2013, she pled guilty to retail theft and received another sentence of probation.

Father's criminal history extends to a year before Child's birth, when he pled guilty to disorderly conduct. Each year thereafter brought a new guilty plea: to recklessly endangering another person and simple assault in 2012; to retail theft, criminal mischief, and harassment in 2013; to theft by unlawful taking and public drunkenness in 2014; and to possession of drug paraphernalia in 2015. Father was minimally involved with Child during this time.

Mother's drug abuse continued, and MGG confirmed to CYF that Mother took Child from MGG's home at times overnight. In May 2015, the court granted legal and physical custody to MGG and permitted only supervised contact between Child and her parents. In June 2015, Child was adjudicated dependent, with continued custody granted to MGG and Mother and Father ordered to participate in services such as drug and alcohol, mental health, and reunification services, and to comply with all recommended treatment.

A September 2015 status conference revealed that Mother was again residing with MGG, and Father was residing in the Cambria County Prison. In November 2015, CYF filed a motion for a goal change, resulting in a January 5, 2016 order changing the goal to adoption, removing Child from MGG's home, and vesting physical and legal custody in CYF. Mother and MGG appealed that order. In the meantime, Child was placed with Foster

Parents. Ultimately, MGG discontinued her appeal and this Court affirmed the order from which Mother appealed. ***In Interest of W.R.B.***, No. 146 WDA 2016, 2016 WL 5921019 (Pa. Super. Sept. 9, 2016).

While Mother's appeal was pending, the trial court held hearings concerning CYF's petition to terminate the parental rights of Mother and Father, and Mother's request that MGA and MGU be considered as permanent resources for Child. After several days of hearings, the trial court entered a decree granting CYF's petition under 23 Pa.C.S. § 2511(a)(2), (a)(5), (a)(8), and (b), ruled out MGA and MGU as an adoptive resource, and directed CYF to move forward with adoption.

Mother and Father timely filed notices of appeal and statements of errors complained of on appeal, each claiming that the trial court erred in granting the termination petition and in ruling out MGA and MGG as a resource. On November 9, 2016, after the appellate briefing was complete, the parties filed in this Court a stipulation that Mother had died on October 24, 2016.

We first address the effect Mother's death has on her appeals. "An issue before a court is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." ***Printed Image of York, Inc. v. Mifflin Press, Ltd.***, 133 A.3d 55, 59 (Pa. Super. 2016) (citation and internal quotation marks

- 4 -

omitted). "Where the issues in a case are moot, any opinion issued would be merely advisory and, therefore, inappropriate." ***Stuckley v. Zoning Hearing Bd. of Newtown Twp.***, 79 A.3d 510, 516 (Pa. 2013).

Although we have found no Pennsylvania case that is directly on point, we conclude that Mother's death renders this appeal moot. ***Accord In re A.Z.***, 190 Cal. App. 4th 1177, 118 Cal. Rptr. 3d 663 (2010) (holding the father's death caused the appeal from the order terminating his parental rights to become moot); ***State in Interest of Minor Female Child***, 470 So. 2d 595, 596 (La. Ct. App. 1985) ("The mother's death terminated her parental rights and renders her appeal moot."). Further, the issues presented are not likely to avoid review upon their repetition in other cases. ***Cf. In re Estate of Border***, 68 A.3d 946, 954 (Pa. Super. 2013) (reviewing merits of appeal that was technically moot because issues, including the powers of the orphans' court to revoke an advance directive/power of attorney, were capable of repetition but likely to evade appellate review). Accordingly, because Mother's death precludes her exercise of any parental rights, we dismiss as moot Mother's appeals docketed at 1143 WDA 2016 and 1144 WDA 2016.

Turning to Father's appeal, we begin with our standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate

courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis. As we explained in *In re L.M.*, 923 A.2d 505 (Pa. Super. 2007),

[i]nitially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* at 511.

The governing statute provides as follows, in relevant part.[1]

---

[1] We may affirm a decree terminating parental rights if we agree with the trial court's determination under any subsection of 23 Pa.C.S. § 2511(a). *In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011).

- 6 -

**(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. …

23 Pa.C.S. § 2511.

"The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Here, the trial court found that Child has never been in Father's care or control. Trial Court Opinion, 9/6/2016, at 29. Indeed, Father has had only limited contact with Child since her birth. ***Id.*** Further, Father acknowledged at the final hearing that he still was "not a resource for her." ***Id.*** at 28.

- 7 -

Father's arguments of trial court error are as follows. He notes that, at the time his parental rights to Child were terminated, he had just been released from jail and "had begun the process of establishing himself in the community, seeking employment, and treatment." Father's Brief at 11. Although he conceded at the termination hearing that he was not at that time "in position to care for [Child], he supported a reasonable alternative": namely placing her with MGA and MGU. *Id.* Father further argues that the record "does not support more than cursory conclusions concerning [C]hild's bond with [F]ather." *Id.*

We are unpersuaded by Father's arguments. Initially we note that the determination of where a dependent child is placed is not based upon the wishes of the parent. *In re K.C.*, 903 A.2d 12, 14–15 (Pa. Super. 2006) ("When a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants…."). Thus, the trial court was under no obligation to accede to Father's wishes to place Child with MGA and MGU.[2]

---

[2] Moreover, the record supports the trial court's decision to rule out MGA and MGU as resources for Child. CYF caseworker Kendra Wheelden offered testimony to show that the involvement of MGA and MGU had failed to serve Child's best interests. N.T., 6/21/2016, at 1-19. From this, the trial court reasonably concluded that placement with MGA and MGU presented a significant risk that Child would "continue to be exposed to volatile situations and police involvement." Trial Court Opinion, 9/6/2016, at 27.

More importantly, "[t]he courts of this Commonwealth have long held that a child's life simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (citation and internal quotation marks omitted).

At no point in Child's life has Father demonstrated a willingness and ability to parent Child. Father offered no testimony regarding when, if ever, he will be able to do. Based upon his history and seeming lack of interest in Child, the trial court did not err in concluding that Father will not remedy the causes of his failure to provide parental care to Child. *See*, *e.g.*, *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (affirming mother's termination under subsection 2511(a)(2) where, after failing to comply with services upon her release from incarceration, she "failed to establish and maintain a lifestyle that would permit her to provide long-term care for [c]hild, and [she] cannot remedy the causes of [c]hild's placement within a reasonable time"). Father's arguments as to the trial court's findings under subsection 2511(a)(2) are without merit.

Nor are we persuaded that the trial court erred in finding under subsection 2511(b) that Child's best interests are served by terminating Father's rights and freeing Child for adoption.

> Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child. …

> [T]he trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (internal citations and quotation marks omitted).

CYF presented ample evidence that Foster Parents are meeting Child's developmental, physical, and emotional needs, and that Child is bonded with them, particularly with Foster Mother. *See* N.T., 6/28/2016, at 43 (Foster Mother testifying as to Child's increasing comfort and affection for Foster Parents); *id.* at 66-67 (therapist Jennifer Johnson testifying that Child is "very comfortable" with Foster Parents and has connected with Foster Mother in a way helpful to her development). In May 2016, Child's sister, D.B.,[3] joined her in living with Foster Parents, causing Child to be "the most excited big sister." *Id.* at 45. D.B.'s arrival in the home led to Child viewing them as a family, with Child beginning to call Foster Father "daddy." *Id.* at 46. In Foster Parents' care, Child is receiving the structure and attention she needs. *Id.* at 67, 70.

Conversely, Father offered no testimony of any interaction with Child. There is no record evidence that Child even knew her Father, let alone that

---

[3] Father testified that he may be the father of D.B., but wanted a DNA test to confirm. N.T., 6/28/2016, at 127-28.

she had a bond with him such that she would suffer any harm from permanently removing him from her life. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) ("In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists."). Accordingly, the trial court acted in its discretion in concluding that CYF met its burden under subsection 2155(b).

Thus, the record supports the trial court's determinations that Child had been in placement for well over 12 months, Father still is unable to parent her, and terminating Father's rights best served Child's developmental, physical, and emotional needs and welfare. The trial court did not err in granting CYF's petition as to Father.

Appeals at 1143 WDA 2016 and 1144 WDA 2016 dismissed as moot. Decree at 1242 WDA 2016 affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 1/27/2017

- 11 -